IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERALD BRIAN VIGIL,

        Plaintiff,

v.                                              CIV 1:23-0837 KWR/DLM

MARTIN O'MALLEY,[1]
Commissioner of Social Security,

        Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Gerald Brian Vigil's Opposed Motion to Reverse or Remand. (Doc. 23.) Having considered the record, submissions of counsel, and relevant law, the Court recommends that the motion be **DENIED**.

**I.    Procedural History**

This is Vigil's second appeal to the United States District Court on his claims for disability benefits. (*See* Administrative Record (AR) at 1286.) On September 26, 2018, Vigil protectively filed an application with the Social Security Administration for disability and disability insurance benefits (DIB) under Title II of the Social Security Act (SSA) and for Supplemental Security Income (SSI) under Title XVI of the SSA. (AR at 271–80.) Vigil alleged a disability onset date of May 1, 2014. (*Id.* at 271.) Disability Determination Services (DDS) determined that Vigil was not disabled initially (*id.* at 90–123) and on reconsideration (*id.* at 124–67). Vigil requested a hearing with an Administrative Law Judge (ALJ). (*Id.* at 200–03.)

Both Vigil and a vocational expert (VE) testified during the *de novo* hearing on March 30, 2020. (*See id.* at 37–88.) ALJ Michael Mannes issued an unfavorable decision on July 6, 2020. (*Id.*

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as defendant in this suit.

1

at 21–29.) Vigil submitted a Request for Review of Hearing Decision/Order to the Appeals Council (*id.* at 268–70), which the Council denied on November 9, 2020 (*id.* at 7–12).

Vigil appealed to this Court, and United States Magistrate Judge Gregory B. Wormuth found that the ALJ "failed to consider [Vigil's] alleged gastric impairments as required by 20 C.F.R. S 404.1520(a)(3)." (*See id.* at 1361.) The Court remanded the case for further proceedings. (*Id.* at 1368.)  On remand, the ALJ held a second hearing on May 3, 2023, in which Vigil and a VE testified. (*Id.* at 1320–49.) ALJ Mannes issued an unfavorable decision on July 5, 2023. (*Id.* at 1286–1310.) Vigil did not seek review from the Appeals Council and instead filed the matter now before this Court on September 26, 2023. (*See* Doc. 1.)

## II.  The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not "doing substantial gainful activity"; (2) he has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) his impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see also* 20 C.F.R. §§ 404.1509,

416.909; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect his capacity to work and of what he "can still do despite his" limitations. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process, ALJ Mannes found that Vigil "engaged in substantial gainful activity [from] January 2015 to May 2018." (AR at 1288 (citing 20 C.F.R. §§ 404.1520(b), 404.1571–76, 416.920(b), 416.971–76).) The ALJ also found "there has been a continuous 12-month period(s) during which [Vigil] did not engage in substantial gainful activity[,]" and the decision addresses that period. (*See id.*)

At Step Two, the ALJ concluded that Vigil "has the following severe impairments: status post remote cerebrovascular accident in 2006; major depressive disorder; generalized anxiety disorder; panic disorder; adjustment disorder with anxiety; [and] PTSD." (*Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).)

At Step Three, the ALJ found that Vigil "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 1292 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).) At Step Four, the ALJ considered the evidence of record and found that Vigil

> has the [RFC] to perform "medium" work as defined in 20 [C.F.R. §§] 404.1567(c) and 416.967(c) with occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, and kneeling; occasional crouching and crawling; and frequent reaching with the left upper extremity. He

> can understand, remember, and carry out simple, repetitive tasks. He can focus for two-hour periods with routine breaks and pace and persist for an eight-hour workday and forty-hour work week. He can tolerate occasional interaction with supervisors and coworkers. He can tolerate no interaction with the general public. He can respond appropriately to changes in a routine work setting which are gradually introduced and infrequent.

(*Id.* at 1296.) ALJ Mannes found that Vigil "is unable to perform any past relevant work." (*Id.* at 1308 (citing 20 C.F.R. §§ 404.1565, 416.965).) Based on his review of the record and the VE's testimony, the ALJ ultimately determined that Vigil "has not been under a disability, as defined in the Social Security Act, from May 1, 2014, through the date of [the ALJ's] decision." (*Id.* at 1310 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).)

## III. Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## IV. Discussion

Vigil argues the ALJ erred by: (1) cherry-picking the record; (2) inadequately evaluating consultative examiner Dr. LaCourt's opinion; and (3) failing to adequately consider a finding from a 2018 brain MRI. (Doc. 23 at 53–60.) I recommend denying the motion to remand.

### A. Vigil fails to show that the ALJ impermissibly cherry-picked.

Vigil first argues that the ALJ erred by cherry-picking record evidence to support a finding of non-disability and downplayed evidence that demonstrates abnormal or more severe limitations. (*See id.* at 53–56.) Vigil focuses this argument on the mental status findings. (*See id.* at 54–55

4

(citing AR at 1292–95).) He recites law prohibiting an ALJ from picking and choosing among medical records and using only evidence that favors a finding of non-disability while ignoring or downplaying more severe findings. (*See id.* at 54 (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)).) The Commissioner contends the ALJ adequately considered the record as a whole, "complied with the agency's articulation requirements[,]" and supported the decision with substantial record evidence. (*See* Doc. 29 at 17–27.) Moreover, as the Commissioner points out, "where [Vigil] complains the ALJ did not cite each and every examination finding, there was a good reason for the ALJ to separate out examination findings" because he "was considering how the evidence lined up with the four broad areas of mental functioning under the paragraph B criteria." (*Id.* at 21 (citing AR at 1292–96).) I agree and will first discuss the ALJ's findings related to the paragraph B criteria.

In determining how an individual's mental disorders affect functioning, the ALJ must evaluate the alleged limitations and restrictions "in categories identified in the 'paragraph B' . . . criteria of the adult mental disorders listings." SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). The ALJ uses these limitations "to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.*; *see also Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). The paragraph B criteria involve "areas of mental functioning a person uses in a work setting" and include how the person can: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

### 1. Understand, remember, or apply information

According to the regulations, understanding, remembering, or applying information involves

the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.

*Id.* § 12.00(E)(1). In concluding that Vigil has a moderate limitation in this area (AR at 1292), the ALJ discussed records regarding Vigil's memory, intelligence, cognition, thought process, and language skills.[2] Vigil emphasizes records that reflect findings of, *inter alia*, suicidal thoughts, excessive guilt, depression, hallucinations, and stuttering speech. (*See* Doc. 23 at 14–19 nn.7–16.) Yet, the ALJ discussed each of these symptoms at other points in the decision.[3]

### 2. Interact with others

The regulations define "interacting with others" as an individual's

abilities to relate to and work with supervisors, co-workers, and the public. Examples include: Cooperating with others; asking for help when needed; handling conflicts with others; stating your own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(2). The ALJ found that Vigil has a moderate limitation in this area. (AR at 1293.) The ALJ discussed records regarding Vigil's past experiences

---

[2] (*See, e.g.*, AR at 1292 (noting hearing testimony that Vigil "cannot read his letters from Social Security"); 1293 (discussing memory impairment (citing, *e.g.*, AR at 585, 607, 853)); (discussing recent and remote memory (citing AR at 736, 752, 1227)); (discussing intelligence (citing, *e.g.*, AR at 742, 752, 927)); (discussing impaired or slowed cognition and concrete thought process (citing, *e.g.* AR at 853, 934, 1666)); (discussing language, word finding difficulties, trouble putting thoughts into words (citing, *e.g.*, AR at 488, 736, 1227, 1670)).)

[3] The Court notes some, but not all, of the points in the decision where the ALJ discussed the above-mentioned symptoms. (*See, e.g.*, AR at 1294, 1296 (suicidal thoughts); 1304 (guilt); 1294, 1301 (depression); 1303 n.1 (hallucinations); 1301 (stutter).)

6

at work, his conflicts and difficulties getting along with family, his lack of friends or social activities, and his behavior at medical appointments and hospital visits.[4]

Vigil again argues the records ALJ Mannes relied on also discuss more abnormal findings including, for example, "psychosis hallucinations" and impaired concentration (Doc. 23 at 20 n.18 (citing AR at 754)); disheveled appearance, loud speech, psychomotor agitation, and delusional thoughts (*id.* at 20 n.19 (citing AR at 1677–78)); and impaired memory, frustrated/highly stressed mood, and obsessional thought content (*id.* at 21 n.22 (citing, *e.g.*, AR at 1650, 1680–81, 1725)). With the exception of any reference to a disheveled appearance, the Court finds that the ALJ adequately discussed these and other symptoms at other points in the decision.[5]

### 3. Concentrate, persist, or maintain pace

The regulations define "concentrating persisting, or maintaining pace" as

> the abilities to focus attention on work activities and to stay on-task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

---

[4] (*See, e.g.*, AR at 1293 (summarizing hearing testimony regarding work at Wal-Mart, which sometimes resulted in panic attacks); 1293–94 (discussing testimony of three to four panic attacks per week, as well as medical records evidencing panic attacks and diagnosis of panic disorder but finding the medical records do not indicate complaints of panic attacks of the frequency with which he testified (citing, *e.g.*, AR at 1232, 1672, and citing generally AR at 420–703, 710–21, 732–1282, 1600–1840)); (discussing hearing testimony that Vigil "has no social activities" and record evidence showing he has no friends, difficulty getting along with family, is afraid to be around people, and has anxiety about driving (citing, *e.g.*, AR at 332–39, 361–75, 511, 1667, 1745)); 1294 (noting Vigil shops monthly with his mother and utilizes medical rides to appointments (citing AR at 749)); (discussing varying behavior, i.e., cooperative, hostile, uncooperative, suicidal, homicidal, agitated, depressed (citing, *e.g.*, AR at 432, 441, 728, 916, 920)); (discussing records showing varying eye contact during appointments, from rare or no eye contact to fair, poor, or good eye contact (citing, *e.g.*, AR at 579, 585, 607, 927, 1605, 1669)); 1294–95 (discussing records showing Vigil exhibited behavior during appointments ranging from avoidant or withdrawn to interactive and within normal limits (citing, *e.g.*, AR at 579, 1010, 1650, 1754)).)

[5] The Court notes some, but not all, of the points in the decision where the ALJ discussed the above-mentioned symptoms. (*See, e.g.*, AR at 1303 n.1 (hallucinations); 1295, 1301 (impaired concentration); 1301 (loud speech); 1304 (psychomotor agitation); 1304 (delusional thoughts); 1293, 1303 (impaired memory); 1302, 1304 (stress/stressors); 1304 (obsessional thought content).)

7

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). ALJ Mannes found Vigil has a moderate limitation in this area and discussed records involving Vigil's abilities to complete tasks, concentrate, pay attention, and focus.[6]

Vigil points to records that demonstrate symptoms of depressed/anxious mood, blunted affect, poor judgment/insight, and poor recent/remote memory. (Doc. 23 at 23 n.25 (citing AR at 736, 1227).) He refers to other records that show "unkempt/disheveled appearance, rambling/stuttering speech, depressed/anxious/concerned/fearful mood, loose associations," fair insight/judgment, poor attention, psychotic thoughts, hallucinations/flashbacks, and fair judgment/insight. (*Id.* at 23–24 n.26 (citing, *e.g.* AR at 1600, 1616, 1625, 1639).) Finally, he cites other records that demonstrate mental status examinations showing impaired memory, restless psychomotor, slightly despondent mood, very concrete thought process, and other symptoms. (*Id.* at 24 n.27 (citing, *e.g.*, AR at 1650, 1672, 1674–75, 1668–69).) Yet the ALJ discussed most of these symptoms elsewhere.[7]

### 4. Adapt or manage oneself

The regulations define this area of mental functioning as

> the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making

---

[6] (*See, e.g.*, AR at 1295 (discussing hearing testimony about problems finishing tasks and following recipes); (discussing allegations of ADHD but finding insufficient evidence to classify it as a medically determinable impairment (citing AR at 307 and citing generally, *e.g.*, AR at 420–703)); (discussing low normal range of attention and concentration at consultative psychological examination, and inconsistent, very slow performance on tests (citing AR at 728–29)); (discussing a range of records that recorded Vigil as having fair concentration and good, poor, impaired, or grossly intact/normal attention (citing, *e.g.*, AR at 736, 742, 752, 1227, 1650, 1665, 1668)); (discussing discharge from home health notes that demonstrated Vigil was able to shift focus and attention (citing AR at 1014)).

[7] The Court notes some, but not all, of the points in the decision where the ALJ discussed the above-mentioned symptoms. (*See, e.g.*, AR at 1294, 1301, 1303–04 (mood – depressed, anxious, dysphoric, etc.); 1303 (affect); 1303–04 (judgment/insight); 1292–93 (recent/remote memory); 1301, 1303 (rambling/stuttering speech); 1304–05 (associations); 1295 (attention); 1303 n.1 (psychotic disorder/hallucinations); 1304 (restless psychomotor); 1293, 1304 (thought process).)

plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(4). In finding that Vigil has a moderate limitation in this area, the ALJ discussed records relevant to Vigil's feelings of overwhelm and other mental health symptoms as well as relief from treatment, his 2019 job loss and resulting move away from independent living, his coping strategies, his history of suicidal thoughts, and his abilities to provide self-care and take medication.[8]

Vigil cites records that reflect disheveled appearance, impaired memory, concrete thought process, stressed or blunt affect/mood, cognitive issues, suicidal thoughts, depressed mood, rare eye contact, difficulty recalling events, hallucinations, restless psychomotor, anger, etc. (Doc. 23 at 27–28 nn.29–31 (citing, *e.g.*, AR at 595, 788, 1684, 1686, 1725, 1757, 1816).) As before, these symptoms appear in other sections of the ALJ's decision.[9]

### 5. Discussion

Vigil argues that ALJ Mannes, throughout his discussion of the paragraph B criteria, cherry-picked evidence and "isolate[d] and divorce[d] normal or mildly abnormal mental status findings from the overall examination to make it appear as though [Vigil] presents competently and somewhat normally." (Doc. 23 at 54 (citations omitted).) Vigil relies primarily on *Bryant v.*

---

[8] (*See, e.g.*, AR at 1295 (discussing feelings of overwhelm (citing, *e.g.*, AR at 1685, 1764, 1796)); (noting "continued mental symptoms" but improvement with treatment (citing, *e.g.*, AR at 420–703)); (recounting that Vigil lived alone in 2018 but moved into trailer on his mother's property after he lost his job (citing, *e.g.*, AR at 590, 788, 1682)); (discussing coping strategies such as staying busy and exiting situation to calm down away from family (citing AR at 1682, 1721, 1757)); 1296 (noting passive suicidal thoughts (citing AR at 1762)); (discussing a home health visit that documented Vigil's abilities to take care of his own hygiene/self-care needs and "independently take the correct oral medication(s) and proper dosage(s) at the correct times" (citing AR at 1014–1018, 1020)).)

[9] The Court notes some, but not all, of the points in the decision where the ALJ discussed the above-mentioned symptoms. (*See, e.g.*, AR at 1293, 1303 (impaired memory); 1293, 1304 (thought process); 1303 (affect); 1302, 1304 (stress/stressors); 1293, 1303 (cognition); 1294, 1296 (suicidal thoughts); 1294, 1301 (depression); 1294 (eye contact); 1293 (recall); 1303 n.1 (hallucinations); 1304 (restless psychomotor); 1294 (anger).)

*Commissioner*, 753 F. App'x 637, 641–44 (10th Cir. 2018). In that case the Tenth Circuit found error in the ALJ's assessment of a treating physician's opinion. *See id.* The Tenth Circuit opined that the ALJ "relied on portions of medical reports that tended to support a finding of non-disability" but "ignored other portions of the same reports that confirmed some of [the physician's] observations . . . ." *Id.* at 641. Vigil argues the same is true here and points to records (as outlined above) the ALJ did not discuss in making the paragraph B findings.

Notwithstanding the fact that the ALJ discussed almost every single symptom Vigil mentions at other points in the single-spaced 24-page decision, Vigil does not adequately explain how the ALJ erred in choosing not to reference these symptoms in the context of finding moderate limitations in the paragraph B criteria. Thus, for example, although the ALJ adequately discussed memory, intelligence, cognition, thought process, and language skills in the context of finding Vigil has moderate limitations in his ability to understand, remember, and apply information (*see* AR at 1292–93), Vigil contends the ALJ erred in not mentioning, *inter alia*, suicidal thoughts, excessive guilt, and stuttering speech (*see* Doc. 23 at 14–19 nn.7–16). Vigil fails to establish that this constitutes error. Similarly, Vigil complains that the ALJ did not discuss hallucinations, concentration problems, a disheveled appearance, loud speech, and other limitations in the context of his ability to interact with others. (*See id.* at 20–21 nn.18–22.) Although the Court agrees the ALJ *could have* referenced these symptoms under this criterion, Vigil mounts no persuasive argument to establish legal error in the ALJ's decision not to do so where the ALJ supported his finding with substantial evidence.

The same could be said for the remaining criteria. Although the ALJ could have discussed Vigil's mood or hallucinations when discussing his ability to concentrate, persist, or maintain pace, or Vigil's disheveled appearance or impaired cognition when evaluating his ability to adapt or

manage himself, the Court does not agree that this omission demonstrates the ALJ cherry-picked or ignored evidence. Rather, the ALJ adequately determined Vigil's limitations by summarizing relevant records. The Court finds that substantial evidence supports the ALJ's findings regardless of the choice not to reference each of the listed symptoms in the discussions of every paragraph B criterion. The Court recommends denying Vigil's motion on this topic.

Vigil makes several other abbreviated arguments related to this section. He states "the ALJ cites the entirety of exhibits 1F, 2F, 3F, 4F, 7F, 11F, 12F, 13F, 14F, 15F, 16F, 17F, and 18F for the proposition that the medical records *do not indicate complaints of panic attacks*." (Doc. 23 at 55 (emphasis added).) The ALJ did not find, however, that the medical records "do not indicate complaints of panic attacks." (*See id.*; *see also* AR at 1294.) Rather, the ALJ cited these records and concluded that "the medical records do not indicate complaints of panic attacks or difficulty going into public *of the frequency, or intensity, to which [Vigil] testified*." (AR at 1294 (emphasis added).) Having reviewed the record de novo, the Court agrees with the ALJ's observation on this point and finds no error.

Vigil asserts that it was "unreasonable" to find that he can take his medications independently, as the ALJ relied on a note that is contradicted by several other medical records. (*See* Doc. 23 at 19 n.16 (citing, *e.g.*, AR at 1015, 1665, 1677–78, 1692–93).) The Court agrees that most other records on this topic reference Vigil's inability to take medications independently or appropriately. (*See, e.g.*, AR at 807 (5/14/2019 doctor's note that Vigil "reports overdosing on his medicine sometimes"), 945 (8/13/2019 home health visit note that he does not take medications as prescribed), 1606 (3/2/2021 psychiatric note that sister helps him with medications), 1638 (11/29/2022 psychiatric note that mother sorts his medications into pillbox and prompts him to take medicine).) Yet the ALJ noted Vigil's difficulties with medication management and simply

11

cited this record to show that on one occasion he was able to demonstrate understanding of filling his pillbox without assistance. (*See* AR at 1293 (citing, *e.g.*, AR at 788, 849, 1022).) The Court finds no error, as this was not the only record the ALJ relied on in finding moderate limitations in Vigil's ability to understand, remember, or apply information. (*See id.* at 1292–93.)

Similarly, Vigil quibbles with the ALJ's note that Vigil was calm and cooperative "after receiving a small dose of Ativan" during an emergency room visit. (*See* Doc. 23 at 20 n.21.) "Being calm after receiving a powerful sedative does not meaningfully support the ALJ's contention that [Vigil's] problems interacting with others are only moderate." (*Id.*) Nor, Vigil argues, does it matter that he is calm and cooperative during doctors' appointments. (*See id.* at 21–22 n.23 (discussing *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021)).) Again, as described above, the ALJ did more than discuss Vigil's ability to be calm and cooperative with medical providers in finding moderate limitations in his ability to interact with others. (*See* AR at 1293–95.) The Court finds no error.

Finally, Vigil points to medical records that indicate he presented to providers with a disheveled appearance, which he argues "contradicts the inference that he is meaningfully capable of independently performing his activities of daily living." (Doc. 23 at 28 n.31 (citing, *e.g.*, AR at 1616, 1639, 1692–93).) Yet there were other records showing he appeared at his appointments appropriately dressed and well-groomed. (*See, e.g.*, AR at 872 (10/1/2019 doctor's appointment), 1650 (5/6/2020 counseling appointment), 1689 (3/31/2021 counseling appointment).) Substantial evidence supports the ALJ's finding on this point.

In sum, the undersigned finds that Vigil has not established the ALJ committed reversible error and that the ALJ's findings are supported by substantial evidence. I recommend denying the motion on the first issue.

### B. The ALJ adequately evaluated Dr. LaCourt's opinions.

Vigil next asserts the ALJ erred in analyzing Dr. LaCourt's opinion. (*See* Doc. 23 at 56–58.) Dr. LaCourt performed a consultative psychological examination on June 17, 2019, and opined limitations in Vigil's abilities to understand and remember, concentrate, interact, adapt, use public transportation, and manage his benefits. (*See* AR at 727–30.) The ALJ found "Dr. LaCourt's opinion largely unpersuasive." (*Id.* at 1307.) The ALJ explained that while Dr. LaCourt's opinion is "arguably supported by his own examination and findings, it is largely inconsistent with other evidence in the record." (*See id.*)

The ALJ first discounted the opinion because LaCourt concluded "that [Vigil's] presentation suggested academic skills at no more than early elementary level." (*Id.* (citing AR at 730).) Vigil argues that the ALJ offered "no rationale" for this conclusion (*see* Doc. 23 at 57), but the Court disagrees. ALJ Mannes explicitly referenced and incorporated his paragraph B findings and found that the record evidence "sometimes indicate[d] deficits and other times reflected within normal limits findings with regard to memory, concentration attention, etc." (AR at 1307.) Vigil argues, as in the first issue, that ALJ Mannes "pars[ed] out normal mental status findings" but "fail[ed] to meaningfully consider" the various abnormal findings contained within the same records. (*See* Doc. 23 at 57.) The undersigned recommends rejecting this argument for the same reason as above: Vigil fails to show reversible legal error and the ALJ's findings are supported by substantial evidence. Moreover, the Court agrees that LaCourt's conclusion on this point is undermined by record evidence, as noted in the ALJ's decision. Vigil told LaCourt and testified at the March 30, 2020 hearing that he finished eighth grade and later obtained his GED with his daughter.[10] (*See* AR at 49, 727; *see also id.* at 1292.) There is also evidence that Vigil did not attend

---

[10] Vigil testified at the May 3, 2023 hearing, however, that he never finished his GED. (*See* AR at 1327.)

13

special education classes, and mental status examinations largely reflected opinions that Vigil has average intelligence. (*See, e.g.*, *id.* at 308, 611, 742, 927, 935; *see also* AR at 1292–93.)

Vigil's next point touches on LaCourt's opinions regarding Vigil's social limitations. (*See* Doc. 23 at 57.) LaCourt opined moderate limitations in Vigil's ability to deal with the public and marked limitations in his ability to deal with coworkers and supervisors. (AR at 730.) The ALJ discounted LaCourt's opinion, explaining that "while [Vigil] endorsed difficulty going into public and getting along, he also reported and testified that he is able to go into public (stores) and accompanies his mother to medical appointments." (AR at 1307.) "He has also relatedly exhibited cooperative behavior." (*Id.*) Vigil argues that this does not constitute "a meaningful explanation for the perceived inconsistency and/or it is impossible for this Court to meaningfully divine [the ALJ's] rationale." (Doc. 23 at 57.) Again, however, the Court finds the ALJ's reference to the paragraph B findings illuminates why he discounted LaCourt's opinion. The ALJ found moderate limitations in Vigil's ability to interact with others, referencing his testimony that he sometimes goes to the store with his mother or sister and utilizes medical rides to appointment, "but he cannot be around even six other people." (AR at 1293–94.) He sometimes had panic attacks when he worked at Wal-Mart. (*See id.* at 1293.) "He endorsed difficulty getting along with family," does not talk to neighbors, and has no friends or social activities. (*Id.* at 1294.) The ALJ also remarked on medical records that showed Vigil yelled at medical staff during an emergency room visit when he was intoxicated and cooperated with medical staff on other occasions. (*Id.*) As discussed above, the undersigned finds no error in the ALJ's assessment of Vigil's ability to interact with others, and the Court is able to follow the ALJ's reasoning in discounting LaCourt's opinion on the same.[11]

---

[11] The undersigned is also left to wonder why Dr. LaCourt found marked limitations in this area. There is no explanation within LaCourt's narrative that indicates a history of negative interactions with coworkers, supervisors, or authority figures. (*See* AR at 727–28.)

14

ALJ Mannes further discounted Dr. LaCourt's opinion because his findings on Vigil's "mental symptoms [were] inconsistent not only with the medical records, in which [Vigil] acknowledge that his mental treatments . . . help," but also with "his consistent ability to care for his mother and stepfather . . . ." (AR at 1307.) Vigil argues that his ability to care for his parents "is not meaningfully inconsistent with marked limitations in attention/concentration or moderate-to-marked limitations working without supervision related to task persistence/frequent breaks." (Doc. 23 at 57–58 (citing AR at 730).) Vigil notes that a marked limitation is one in which an individual's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited." (*Id.* (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1) (subsequent citation omitted).) He notes that "marked limitations in an area do not preclude all functioning." (*Id.*) Vigil also repeats his contention that the ALJ cherry-picked evidence and ignored "significant evidence that (1) [his] mother helps care for him; (2) to the extent [Vigil] cares for his mother, he is not doing a good job; and (3) his status as a 'caregiver' may arise more from delusions, obsessions, and guilt than actual caregiving." (*Id.* (citation omitted).) The Commissioner responds that the ALJ appropriately considered the inconsistent evidence on this point. (Doc. 29 at 30–31.) The Commissioner further argues that Vigil's "argument about aspects of Dr. LaCourt's opinion . . . goes to the weight of the evidence as a whole, which the Court cannot reweigh." (*Id.* at 31 (citing *Olson v. Comm'r, SSA*, 843 F. App'x 93, 97 (10th Cir. 2021)).) The Court agrees. As the Tenth Circuit noted in *Olson*, Vigil's contentions regarding his status as a caregiver "amount to an argument that this court should reweigh the evidence, which [it] cannot do." *Olson*, 843 F. App'x at 97 (quoting *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014)).

The undersigned recommends the Court deny Vigil's motion on this issue.

15

### C. The ALJ appropriately considered Vigil's allegations of stroke.

Finally, Vigil argues that the ALJ committed reversible error by ignoring evidence within a May 26, 2018 medical record of a brain MRI. (*See* Doc. 23 at 59.) The MRI showed, in relevant part, "moderate diffuse parenchymal volume loss." (*See* AR at 486.) The Commissioner responds that the ALJ clearly acknowledged the allegation of a stroke but adequately considered the record evidence to assess work-related limitations. (*See* Doc. 29 at 32–35.)

ALJ Mannes referenced Vigil's report that he had a stroke in May 2018. (AR at 1298 (citing AR at 307, 413).) He noted that Vigil's family physician, Dr. Veneta Ianakieva, "reviewed brain imagining and informed [Vigil] that he did not experience a stroke in May 2018." (*Id.* (citing AR at 444, 580) (subsequent citations omitted).) The ALJ pinpointed the same record Vigil references in this argument.[12] (*See id.*; *see also* AR at 444 (noting the finding of "moderate diffuse parenchymal volume loss").) It is therefore clear to the Court that ALJ Mannes considered this record, and the Court should reject Vigil's argument that the ALJ ignored it. *See, e.g.*, *Wall*, 561 F.3d at 1070 (where "the ALJ indicates he has considered all the evidence[,] our practice is to take the ALJ at his word") (quotation marks, brackets, and citation omitted).

Still Vigil surmises that, had the ALJ directly discussed the specific finding of "moderate diffuse parenchymal volume loss," he would have found it supported Vigil's allegations of mental limitations and Dr. LaCourt's opinion. (*See* Doc. 23 at 59.) The Commissioner responds that "[t]here is no evidence supporting this speculation, and [Vigil's] argument seeks to have the Court reweigh evidence." (Doc. 29 at 32 (citing *Lax*, 489 F.3d at 1084).) The Court agrees. Moreover, as the Commissioner points out, "Dr. Ianakieva did not diagnos[e] memory loss or a cognitive

---

[12] The ALJ noted elsewhere Dr. Ianakieva's related comment "question[ing] possible malingering." (*See* AR at 1299 (citing AR at 580).)

16

disorder based on the MRI" (*id.* at 33), but rather found the "moderate cerebral volume loss . . . and [Vigil's] severe alcohol use disorder put[] him at extremely high risk" of falls and thus recommended physical therapy (*see* AR at 587).[13]

Relatedly, Vigil argues in a footnote [14] that the ALJ erred in concluding that Vigil's neurocognitive disorder or memory impairment are not medically determinable impairments. (Doc. 23 at 13 n.5 (discussing AR at 1292).) Specifically, Vigil contends that the ALJ "ha[d] no grounds to dispute the diagnosis" of Cheri Cerghizan, CNP, who assessed Vigil with memory impairment, and of psychiatrist Colleen Conklin, who referred to Vigil as having a mild cognitive disorder.[15] (*See id.* (citing AR at 1292); *see also* AR at 1746, 1755.) Vigil relies on *Wujcik v. Colvin*, No. 13-cv-0335 JCH/SMV, 2014 WL 12791269 (D.N.M. May 7, 2014) and *Kemp v. Bowen*, 816 F.2d 1469 (10th Cir. 1987). In each case, not only did the ALJ erroneously reject medical opinions submitted by the claimant's treating physicians, but also the rejected opinions were the only medical opinions in the records. *See Kemp*, 816 F.2d at 1474–76; *Wujcik*, 2014 WL 12791269, at *3–6. The circumstances here are distinguishable, as the ALJ did not reject medical opinions, but rather diagnoses or provider notes, which constitute "other medical evidence." 20 C.F.R. § 404.1514(a)(3). According to the regulations, a medical opinion is a "statement[] from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). In these

---

[13] Ianakieva does not explicitly state what the "extremely high risk" is for, but this note is nestled under a section of the medical record outlining the physician's "plan" for Vigil's "history of falls." (AR at 587.)

[14] The Court discourages counsel from making substantive arguments in footnotes, particularly those buried outside of the argument section and in the context of a 62-page brief.

[15] ALJ Mannes also noted that Dr. LaCourt assessed Vigil "with possible major neurocognitive disorder, without behavioral disturbance." (AR at 1292 (citing AR at 729).)

records, Conklin stated in a mental status examination that Vigil's "memory [is] impaired due to mild cognitive disorder" (AR at 1746), and Cerghizan simply listed "memory impairment" under the heading of "diagnosis" (*id.* at 1755). Neither provider offered opinions on Vigil's limitations stemming from the diagnoses.

Vigil summarily asserts, though, that the 2018 brain MRI provided evidentiary support for Conklin and Cerghizan's diagnoses. (*See* Doc. 32 at 7.) Vigil does not explain *how* the 2018 brain MRI supports these diagnoses. (*See id.*) Regardless, the Court finds that the ALJ's conclusion is based on substantial evidence. First, Vigil's family physician found that the MRI "did not show any acute abnormality" and recommended only physical therapy based on a risk for falls. (*See* AR at 587.) It is also worth noting that another provider, Robin Fishman, PA-C, examined the same MRI in the context of an appointment for a stroke follow-up and concluded that while the MRI "showed age related changes[,]" it "was otherwise unremarkable." (*See id.* at 483.) And as described above, the ALJ's paragraph B findings were adequate and supported by substantial evidence.

The Commissioner also contends that Vigil's "medically determinable impairment argument is a red herring." (Doc. 29 at 18.) "The mere '[d]iagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations.'" (*Id.* (quoting *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016)).) The Tenth Circuit explained in *Ray v. Colvin* that "a failure to find an impairment medically determinable is essentially a step-four error because the ALJ is only required to consider medically determinable impairments in the RFC at step four, whether severe or not." 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Wells*, 727 F.3d at 1069). "But even then, such error would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC."

18

*Id.* The Commissioner argues there is no error here because "the ALJ considered [Vigil's] memory, language, and cognition issues when assessing the highly restrictive mental RFC." (Doc. 29 at 19 (citing AR at 1296–1308; *Ray*, 657 F. App'x at 734).)

Vigil disagrees and contends that "any limitations arising from [his] cognitive disorder or memory impairment were not considered" in evaluating the RFC. (Doc. 32 at 7.) He cites a July 5, 2018 medical record and lists the symptoms from the related mental status examination that he believes supports these diagnoses: "blunted affect, tangential speech, depressed mood, abnormal recent memory, severely restricted affect, [and] rare eye contact . . . ." (Doc. 23 at 13 n.5 (citing AR at 582–87).) The ALJ, however, referred to the mental status examination contained in this exact record on at least three separate occasions. (*See, e.g.*, AR at 1293 (citing AR at 585), 1294 (citing AR at 585), 1301 (citing AR at 585).) Moreover, the ALJ adequately discussed and considered Vigil's varying affect (*see id.* at 1303–04), speech (*id.* at 1301, 1303), memory (*id.* at 1292, 1301, 1303), eye contact (*id.* at 1294, 1303), and depression (*id.* at 1294, 1301–04) throughout the decision. Thus, the Court finds that ALJ Mannes adequately considered any disputed impairments and symptoms in crafting the RFC, and Vigil fails to establish legal error. Accordingly, the undersigned recommends Vigil's motion on this issue be denied.

V.    **Conclusion**

"Judicial review of the Commissioner's decision is limited to determining 'whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards.'" *Jaramillo v. Saul*, No. 1:19-CV-0488 KRS, 2020 WL 6781789, at *2 (D.N.M. Nov. 18, 2020) (quoting *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing 42 U.S.C. § 405(g)). As the Supreme Court has determined, "the threshold for such evidentiary sufficiency is not high": it means "more than a mere scintilla" or "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted). While the Court may "have made a different choice had the matter been before it[,]" it "may not displace the agency's choice between two fairly conflicting views . . . ." *Lax*, 489 F.3d at 1084 (quotation marks, brackets, & citation omitted).

As explained above, the undersigned recommends finding that Vigil fails to show reversible legal error. It is true that the medical record in this case involves conflicting evidence and findings. The undersigned may well have reached a different conclusion had I been in the ALJ's position. However, substantial evidence supports the ALJ's findings.

**IT IS HEREBY RECOMMENDED** that Vigil's Opposed Motion to Reverse or Remand (Doc. 23) be **DENIED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE